**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


RAY NASSAR and GENA SMITH,     \*
     \*
     Plaintiffs     \*
     \*
V.     \*
     \*     NO: 3:11CV00133  SWW
     \*
EARNESTINE JACKSON, individually     \*
and in her official capacity as a Hughes     \*
School Board Member, ET AL.     \*
     \*
     Defendants

## ORDER

Plaintiffs Ray Nassar ("Nassar") and Gena Smith ("Smith") commenced this employment discrimination case under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §§ 1981 and 1983 against the Hughes School District ("District"), the District's School Board members, and the District's superintendent of schools.  Nassar and Smith allege that Defendants violated their federally protected rights by terminating their employment contracts based on their race and without affording them procedural due process.  Plaintiffs also bring supplemental state law claims, including claims for breach of contract.

Before the Court are Nassar's and Smith's motions for partial summary judgment (docket entries #34, #35, #36, #37),  Defendants' responses in opposition (docket entries #38, #39)  and Nassar's and Smith's replies (docket entries #43, #44).  After careful consideration, and for reasons that follow, Nassar's motion will be granted in part and denied in part, and Smith's motion will be denied.

## I.  Summary Judgment Standard of Review

Plaintiffs seek summary judgment on their claims that Defendants terminated their employment contracts without providing them procedural due process and in breach of contract. Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" Id. at 587 (quoting Fed. R. Civ. P. 56(e)).   "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

## II.  Plaintiff Nassar's Motion for Partial Summary Judgment

The following facts are undisputed.[1]  Nassar served as the District's superintendent of

_____

[1]Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried.  "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the

schools pursuant to a three-year contract for the period July 1, 2010 through June 30, 2013.

Nassar's contract provided that he would be paid $274,000 in 72 installments, plus benefits

including the use of a school cell phone and vehicle and payment of all professional dues.  *See*

docket entry #35, Ex. A.   Although the District hired Nassar to perform the duties of

superintendent, his employment contract is set forth on a form titled "Teacher's Contract," which

contains the following provision:

> BOARD POLICIES: The personnel policies of each school district in effect at the
> time a teacher's contract is entered into or renewed shall be considered to be
> incorporated as terms of said contract and shall be binding upon both parties unless
> changed by mutual consent. (Act 224 of 1983).

On January 14, 2011 Nassar met with Defendant Jackson, a member of the school board.

During the meeting, Jackson called Nassar a liar and cursed at him,[2] and Nassar admits that he

uttered the following statement: "Get your ass out of my office or I'm going to call the police . . .

have a nice day."   Docket entry #35, at 3.

Jackson informed other board members about her meeting with Nassar, and the school

board called a special meeting for January 19, 2011.   Written notice of the meeting stated only

that the meeting concerned "contracts [and] personnel."  *See* docket entry #35, Ex. B.

Immediately after the meeting convened on January 19, 2011, the school board went into

a closed meeting, which did not include Nassar.   Nassar sat in the public gallery during the

closed meeting.  When the board members returned to the gallery after the private session, they

non-moving party . . . . " Local Rule 56.1(c).

[2]In deposition, Jackson acknowledged that she used the word "bullshit" during her
meeting with Nassar.  *See* docket entry #35, Ex. H at 48.

announced that Nassar was suspended without pay.  According to Jackson, who attended the meeting, Nassar's "insubordination" was the topic of the closed meeting.

By letter dated January 25, 2011, the school board president, Defendant Robinson, directed Nassar to surrender his keys, vehicle, credit cards, passwords, and codes to the interim superintendent.  Docket entry #35, Ex. C.   Nassar hired an attorney, who wrote two letters to the school board, protesting Nassar's suspension and requesting that he be reinstated as the superintendent.

Neither Nassar nor his attorney received any communication from the board, and they attended the next regularly-scheduled school board meeting on February 8, 2011, during which the board members retired into a closed, executive session.  After learning that the board would discuss Nassar's contract during the closed meeting, Nassar's attorney requested permission to attend.  The board permitted Nassar to attend the executive session, but it barred Nassar's attorney from the meeting.   While Nassar was present during the executive session, the board did not discuss the reason for his suspension, and Nassar was expelled from the meeting before it ended.

After the board members returned from executive session, they announced that Nassar's contract had been terminated and that he would receive compensation from the date of his suspension up to February 8, 2011.  After that announcement, Defendant Robinson, the Board's president, handed a letter to Nassar, dated February 7, 2011, which reads as follows:

> You have been suspended as the Superintendent of the Hughes School District.  The reasons for your suspension include the incident that [occurred] in our central office between you and a school board member.  We discussed this action at our board meeting on January 19, 2011.

You attended the board meeting on January 19, 2011 and admitted to the board that you behaved in the way described by Ms. Jackson.  You used profanity in the presence of other office staff and told Ms. Jackson to get her "*ss" out of your office and not to return.  You warned Ms. Jackson that [if] she was to return to your office, you would call the police.

Your contract requires that you carry forth the duties of a Superintendent.  You must carry yourself in a way that is becoming of a superintendent of schools.  Your display on that day was beyond what is acceptable to this board.

Members of the board expressed to you that they have lost confidence in your ability to lead the district.  Their loss of confidence includes this event and other matters which have been occurring in the district.

The board meets tomorrow night.  At this meeting, I will ask that the board take formal steps to decide whether to reinstate you, terminate you or something in between.  If you have any questions, please do not hesitate to contact me.

Docket entry #35, Ex. G.  It is undisputed that prior to the termination of Nassar's contract on February 8, 2011, neither the board, nor anyone on behalf of the board, presented Nassar the foregoing letter.

By letter to Robinson dated February 9, 2011, Nassar's attorney requested a hearing regarding his termination.  By letter dated February 17, 2011, counsel for the board denied Nassar's request for a hearing.

**A.  Procedural Due Process**.

Plaintiffs suing under 42 U.S.C. § 1983 must establish two essential elements: (1) that the defendant committed the complained-of conduct under color of state law, and (2) that the conduct deprived the plaintiff of a right secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983.  In this case, there is no dispute that Defendants acted under color of state law during the complained-of events,[3] but Defendants assert that genuine issues for trial exist

---

[3] "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Roe v. Humke*, 128 F.3d 1213, 1215

regarding Nassar's claim that they terminated his contract without affording him procedural due process.

To establish a violation of procedural due process, Nassar must establish the existence of a constitutionally protected property interest. *See Marler v. Missouri State Bd. Of Optometry*, 102 F.3d 1453, 1456 (8th Cir. 1996). "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 92 S.Ct. 2701, 2709 (1972).

"[Eighth Circuit] cases clearly establish that public employees are entitled to procedural due process when they are fired from positions in which they have a legitimate expectation of continued employment, that is, when the employee's entitlement to the job is sufficiently certain so as to amount to a constitutionally protected property interest." *Holloway v. Reeves,* 277 F.3d 1035, 1038 (8th Cir. 2002)(citation omitted)(finding that superintendent with more than two years remaining on his contract had a legitimate expectation of continued employment). The Court finds that Nassar's contract, which specifies Nassar would serve as superintendent from July 1, 2010 through June 30, 2013, gave Nassar a legitimate expectation of continued employment. *See Moore v. Warwick Public School Dist. No. 29*, 794 F2d 322, 326 (8th Cir. 1986)(finding that superintendent had a protected property right by virtue of his one-year contract with school district); *see also Crain Industries, Inc. v. Cass,* 305 Ark. 566, 570-571, 810 S.W.2d 910, 913 (1991)(noting an exception to the employment-at-will doctrine "where there is an agreement that the employment is for a specified time, in which case firing may be only for cause . . . . ").

_____

(8th Cir. 1997).

Having determined that Nassar had a property interest in continued employment, the next question is whether the Board afforded Nassar the process due before it terminated his contract. When a public employee possesses a property interest in continued employment, the Due Process Clause requires "that, prior to termination, the employee be given oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to respond." *Riggins v. Bd. Of Regents of Univ. of Nebraska*, 790 F.2d 707, 710 (8th Cir. 1986) (citing *Cleveland Bd. of Educ. v. Loudermill*, 105 S.Ct. 1487, 1495 (1985)).  Here, it is undisputed that prior to the termination of Nassar's contract, he did not receive written notice of the reasons for his termination.  And even assuming that Nassar received oral notice of the charges against him, the undisputed record shows that he did not receive an opportunity to respond to the charges against him, either before or after his termination.  A fundamental requirement of procedural due process is the opportunity to be heard, at a meaningful time and in a meaningful manner.

The Court finds, as a matter of law, that Nassar was deprived of a protected property interest without due process.  However, the question of the appropriate remedy for this constitutional deprivation remains an issue for trial.  *See Hopkins v. Saunders*, 199 F.3d 968, 979 (8th Cir. 1999)("Where an employee would have been discharged even if he had received due process, i.e. was discharged for cause, his sole injury is the lack of process and only nominal damages are proper.").

**B.  Breach of Contract**

Nassar contends that he is entitled to summary judgment in his favor on his breach of contract claim.  According to Nassar, it is "beyond argument" that the District breached its contract with him because  "Defendants' grounds for terminating him were vague and arbitrary." Docket entry #35, at 16.  Nassar argues that his contract "contains no language requiring any

7

particular standard of conduct" and that the "Board may not fire a superintendent . . . for vague or ambiguous reasons."[4]  *Id*. at 12.

To merit the summary adjudication of his breach of contract claim, Nassar must support his motion with credible evidence establishing each element of his claim.  If Nassar fails to meet his initial burden, the Court must deny his motion, regardless of Defendants' response.  *See Celotex Corp. v. Catrett*, 477 U .S. 317, 323 (1986).   Under Arkansas law, an employment contract for a definite term may not be terminated before the end of the term, except for cause or by mutual agreement, unless the right to do so is reserved in the contract. *See Griffin v. Erickson*, 277 Ark. 433, 437, 642 S.W.2d 308, 310 (1982).  Nassar shoulders that burden to prove that he was terminated without good cause, and he has failed to point to evidence showing that his termination was unjustified.  *See Joshua v. McBride*, 19 Ark. App. 31, 716 S.W.2d 215 (1986) ("Whether justification exists for termination of the contract under the facts and circumstances of a case is usually a question of fact.").

## II.  Plaintiff Smith's Motion for Partial Summary Judgment

Pursuant to a contract entered September 15, 2010, the District employed Smith as its general business manager for "a period of 12 months, representing 240 days, beginning on the 1st day of July, 2010."  Docket entry #37, Ex. A.   Smith's contract provided that she would receive $40,392.

---

[4]Nassar cites *Stephenson v. Davenport Community School District*, 110 F.3d 1303 (8th Cir. 1997) for the proposition that "A Board may not fire a superintendent . . . for vague and ambiguous reasons."  Docket entry #35, at 12.  In *Stephenson*, the Eighth Circuit considered whether a school district's regulation prohibiting gang symbols violated the void-for-vagueness doctrine embodied in the Due Process Clauses of the Fourteenth and Fifth Amendments.  Nassar does not challenge the constitutionality of a policy or regulation, and the Court finds no connection between the void-for-vagueness doctrine and Nassar's claim for breach of contract.

After the District terminated Nassar's contract, it hired a new superintendent, Jimmy

Wilkins.  Initially, Wilkins assured Smith that her job was secure, but on February 17, 2011,

Wilkins handed Smith a memo, which reads as follows:

> To:    Mrs. G. Smith
> From:  J. Wilkins
>
> As a follow-up to our meeting yesterday, you have been reassigned to Mr. Bruce
> effective today.  Mr. Bruce will instruct you on your daily duties.

Docket entry #27, Ex. D.

Wilkins named another District employee, Sherry Thomas, as the District's general

business manager, and he reassigned Smith to work in a secretarial position.   At the next

regularly-scheduled Board meeting, the Board, without discussion, approved Wilkins's

recommendation to reassign Smith.   Subsequently, Smith requested a hearing before the Board,

which was held on May 3, 2011.  Prior to the May 3 hearing, the Board gave Smith no reason for

her reassignment.  And during the hearing, when asked why he reassigned Smith to a secretarial

position, Wilkins answered: "Because I can."

During the May 3 hearing, Smith's counsel presented a copy of a letter to Sherry

Thomas, the person who replaced Smith as general business manager.  The letter to Thomas,

written by a former superintendent, reprimands Thomas for transferring sick leave earned by

former District employees.  The letter reads as follows:

> On or about January 24, 2009, I became aware of your having completed several
> Sick Leave forms, transferring leave from others, including former employees, to
> three employees, one of whom is your daughter.
>
> In addition, the forms, with one exception, were not signed to signify their approval
> of the transfers.  Since some of the persons from whom you transferred days are no
> longer employed in the District, they have no ability to transfer sick leave days.  In
> fact, you filled out the transfer forms, yourself.

9

You should also understand that your having attempted to transfer sick leave to a member of your family looks very improper, and it is.

You have informed me that the records have been corrected.

In the future, if sick leave is transferred, it will be done in a manner consistent with District policy. The transfer form will be filled out and singed by the person transferring the sick leave days. There will be no transfers of sick leave from those not currently employed in the District. Any recurrence of this incident, or anything similar, could result in your dismissal.

Docket entry #37, Ex. F.

After Smith's counsel presented the letter to the board, board members demanded to know how Smith had obtained the letter. When Smith gave no definitive answer as to how she came to possess the letter, board members began inquiring into matters including: (1) whether Smith submitted an insurance claim for a stolen camera; (2) whether Smith was Nassar's girlfriend; and (3) whether Smith had received excessive overtime pay. Smith had not received prior notice that the foregoing topics would be at issue during the meeting. After questioning Smith, the board went into a closed meeting. When the board members returned to the public meeting, board member Jeff Spaletta moved to amend Wilkins's recommendation to reassign Smith and to terminate Smith effective immediately. The motion passed unanimously.

In an undated letter to Smith, Wilkins wrote:

This correspondence is to officially inform you of a decision made by the Hughes School Board of Directors . . . in regards to your hearing. The Board met in special session on Tuesday, May 3, 2011 at 6:00 o'clock p.m.

After hearing testimony both from the District and yourself the Board voted, because of new evidence presented by you, to modify the Superintendent's recommendation of your pay as the principal's secretary but to terminate your employment immediately. If any pay is owned to you it will be sent via certified mail.

As it relates to your vacation days, please review the enclosed documents.

Docket entry #37, Ex. H.

### A. Procedural Due Process

In support of her motion for partial summary judgment, Smith asserts that she had a property right in the remaining term of her one-year contract with the district.  Although public employees are entitled to procedural due process when they are fired from positions in which they have a legitimate expectation of continued employment, there is no constitutionally protected property interest in a particular job assignment or position, aside from the economic benefits of the job.  *See Holloway v. Reeves*, 277 F.3d 1035, 1040 (8th Cir. 2002).  Here, Wilkins's post-termination letter to Smith states that any pay due Smith would be sent to her via certified mail, and Smith does not allege that the Board failed to pay her money due under the terms of her contract.  Accordingly, Smith has failed to present facts demonstrating an essential element of her due process claim, and her motion for summary judgment on that claim must be denied.

### B. Breach of Contract

Smith contends that the District breached a duty to allow her to continue in her position as business manager.  According to Smith, it is clear that the District breached her contract because "a party breaches a contract when the party does not do what the contract requires of him."  Docket entry #37, at 10(quoting Arkansas Model Instruction 2401).

Like Nassar, Smith shoulders that burden to prove, by a preponderance of the evidence, that the District breached her employment contract by terminating her without good cause.  *See Greenwood School Dist. v. Leonard*, 102 Ark. App. 324, 328, 285 S.W.3d 284, 288 (2008).  Additionally, Smith must show that she suffered damage as a result of the District's breach.  *See Ultracuts Ltd. v. Wal–Mart Stores, Inc*., 343 Ark. 224, 231–232, 33 S.W.3d 128 (2000)("A

person may be liable for breach of contract if the complaining party can prove the existence of an agreement, breach of the agreement, and resulting damages.").  Here, even assuming that the District was unjustified in terminating Smith's employment contract and thus breached the agreement,  Smith has failed to allege that she suffered monetary damages as a result of the alleged breach.

## IV.  Conclusion

IT IS THEREFORE ordered that Plaintiff Nassar's motion for partial summary judgment (docket entry #34) is GRANTED IN PART AND DENIED IN PART.  The motion is granted to the extent that the Court finds, as a matter of law, that Defendants terminated Nassar's employment contract without providing him procedural due process.   The amount of any damages resulting from that constitutional deprivation remains an issue for trial.  Nassar's motion for summary judgment on his breach of contract claim is denied.

IT IS FURTHER ORDERED that Plaintiff Smith's motion for partial summary judgment (docket entry #36) is DENIED.

IT IS SO ORDERED THIS 18TH  DAY OF JUNE, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE