IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| RAY NASSAR and GENA SMITH, | * | |
| | * | |
| Plaintiffs | * | |
| V. | * | |
| | * | NO: 3:11CV00133 SWW |
| EARNESTINE JACKSON, individually | * | |
| and in her official capacity as a Hughes | * | |
| School Board Member, ET AL. | * | |
| | * | |
| Defendants | | |

**ORDER**

Among the claims joined in this action, plaintiff Ray Nassar ("Nassar") seeks damages from defendants Earnestine Jackson ("Jackson") and Jimmy Wilkins ("Wilkins") for defamation. During a jury instruction conference, defense counsel argued that Nassar's defamation claims are governed by the actual malice standard announced in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710 (1964). For reasons stated from the bench, the Court agreed and granted defendants' request for a jury instruction governing defamation claims by public officials or public figures. This order reaffirms that ruling and restates the Court's findings.

During the events in controversy in this case, Nassar served as the superintendent of the Hughes School District ("District"), Jackson served on the Hughes School Board ("Board"), and Wilkins followed Nassar as superintendent after the Board terminated Nassar's employment contract on February 8, 2011.

In support of Nassar's defamation claim against Jackson, he alleges that on July 13, 2010, the Board voted to approve his recommendation to hire Gena Smith as the District's general business manager, and after the vote, Jackson stated: "He's promoting his girlfriend." Nassar also alleges that Jackson called him a liar during an October 12, 2010 Board meeting. As for his

claim against Wilkins, Nassar alleges that during a public Board meeting held April 12, 2011, Wilkins–the District's newly-appointed superintendent–made statements that implied Nassar had mishandled or stolen $1,400,000 from the District.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280, 84 S.Ct. 710, 726 (1964), the Supreme Court held that the First Amendment requires a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice–that is, with knowledge that it was false or with reckless disregard of whether it was false.   Subsequently, the Court extended the actual malice standard to defamation claims brought by public figures. *See Curtis Publishing v. Butts*, 388 U.S. 130, 87 S. Ct. 1975 (1967).

The Supreme Court has established a minimum standard by which a plaintiff may qualify as a public official:

> The public official designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.... Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, ... the *New York Times* malice standards apply.

*Rosenblatt v. Baer*, 383 U.S. 75, 85–86, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966).  The foregoing definition of public official balances society's interests in protecting reputations and encouraging free discussion of governmental affairs because the public official's "position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Id*. at 86 n. 13, 86 S.Ct. at 676 n. 13.

Under Arkansas law, a superintendent of schools is the executive officer of a school district board of directors, who directs the affairs of the school district and carries out the policies of the school district.[1]  *See* Ark. Code. Ann. § 6-13-701.   Given that Nassar had substantial responsibility over the affairs of the Hughes School District and the fact that the asserted defamatory statements related directly to the performance of his important public duties, the Court finds that he qualifies as a public official and must show that defendants published defamatory statements with actual malice.

IT IS SO ORDERED THIS 24TH DAY OF JANUARY, 2013.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[1] Although the Arkansas Supreme Court has not addressed whether a school superintendent meets the definition of public official, courts in other jurisdictions have held that persons in positions such as Nassar's are public officials or public figures.  *See Collins v. Taos Bd. of Educ.,* No. CIV 10-407 JCH-LFG*,* 2012 WL 4466657, *8 (D.N.M. Sept. 27, 2012); *Beck v. Lone Star Broad Co.*, 970 S.W.2d 610, 614-15 (Tex. App.1998)(holding assistant superintendent for business services of school district a public official); *Purvis v. Ballantine*, 487 S.E.2d 14, 17 (Ga. Ct. App.1997)(holding superintendent public official because he routinely made personnel, administrative and budgetary decisions affecting the public school system); *Scott v. News-Herald*, 496 N . E.2d 699, 703 (Ohio 1986)(holding school superintendent was public official because he was responsible for implementing policies, expected to serve as a role model for students, and exercised supervisory authority over students).