IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| RAY NASSAR and GENA SMITH, | * | |
| | * | |
| Plaintiffs | * | |
| V. | * | |
| | * | NO: 3:11CV00133 SWW |
| EARNESTINE JACKSON, individually | * | |
| and in her official capacity as a Hughes | * | |
| School Board Member, ET AL. | * | |
| | * | |
| Defendants | | |

## ORDER

Plaintiffs Ray Nassar ("Nassar") and Gena Smith ("Smith") brought this employment dispute under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1983 against the Hughes School District ("District"), Hughes school board member Earnestine Jackson ("Jackson"), and the Hughes superintendent of schools, Jimmy Wilkins ("Wilkins"). On January 22, 2013, a jury returned verdicts in Plaintiffs' favor. Now before the Court are (1) the District's and Jackson's renewed motion for judgment as a matter of law (docket entry #132) and Plaintiffs' response in opposition (docket entry #138); (2) Wilkins's renewed motion for judgment as a matter of law (docket entries #129, #130), Plaintiffs' response in opposition (docket entry #137), Wilkins's reply (docket entry #139); and Plaintiffs' concession that Wilkins's motion should be granted (docket entry #141); and (3) Plaintiffs' motion for attorney's fees (docket entry #110), Wilkins's response in opposition (docket entry #125), the District's response in opposition (docket entries #127, #128), and Plaintiffs' reply (docket entry #131). After careful consideration, and for reasons that follow, the District's and Jackson's renewed motion for judgment as a matter of law is denied, Wilkins's renewed motion for judgment as a matter of law is granted, and Plaintiffs' motion for attorney's fees is granted in part and denied in

part. Additionally, in light of the Court's decision to grant Wilkins's renewed motion for judgment as a matter of law, Wilkins's motion to stay enforcement of the judgment against him (docket entry #117) is denied as moot.

## I. Background

Nassar served as the District's superintendent of schools under a three-year contract, beginning July 1, 2010, and Smith worked as the District's general business manager under a one-year contract, beginning July 1, 2010.  On July 11, 2011, Nassar and Smith, both Caucasian, commenced this lawsuit charging that the District, through its majority African-American school board,  violated their federally protected rights by terminating their employment contracts based on race and without due process.  Plaintiffs also pursued  supplemental state law claims: both sued for breach of their employment contracts, Smith sued Jackson for defamation, and Nassar brought defamation claims against Jackson and Wilkins.

On June 18, 2012, the Court granted partial summary judgment Plaintiffs' favor, finding as a matter of law that the District deprived both plaintiffs of a protected property interest without affording them procedural due process.  However,  the question of damages remained for trial.

The case was tried to a jury beginning January 14, 2013, and on January 22, 2013, the jury returned verdicts in Plaintiffs' favor.  Regarding damages for procedural due process violations, the Court instructed the jury to award an amount that would fairly compensate each plaintiff for damages sustained as a direct result of the constitutional deprivation, giving consideration to any wages and fringe benefits that the plaintiff would have earned in his or her employment with the District if he or she had received a constitutionally-required hearing.  The

instructions and verdict forms directed that if the District proved that it would have discharged a plaintiff even if he or she had received a hearing, damages would be limited to the wages and fringe benefits that the plaintiff would have earned from the date of discharge through the earliest date the plaintiff would have been discharged following a hearing.

Plaintiffs also sought lost wages and benefits under their race discrimination and contract claims.  Accordingly, Court's Instruction No. 29 and several reminders contained on the verdict forms instructed the jury that plaintiffs could collect only one award for the loss of wages and benefits.

### Jury Verdicts for Ray Nassar

In answers to interrogatories, the jury found that the District failed to prove that it would have discharged Nassar even if he had received a hearing and that if Nassar had received a hearing, he would have earned $340,000 in his employment with the District.  The jury found for Nassar on each of his additional claims: a race discrimination claim for wrongful termination under Title VII against the District;  a race discrimination claim for wrongful termination under § 1983 against Jackson, in her individual capacity; a breach of contract claim against the District; a defamation claim against Jackson; and a defamation claim against Wilkins.  In accordance with the Court's instructions, the jury reduced Nassar's damages for lost wages and benefits in connection with his claims for race discrimination and breach of contract by the amount awarded for due process violations.  The jury also awarded Nassar $20,000 for emotional pain, suffering, and mental anguish suffered as a result of race discrimination; $5,000 in punitive damages against Jackson for race discrimination; $2,500 in compensatory damages and $5,000 in punitive damages against Jackson for defamation; and $16,000 in compensatory

damages and $4,000 in punitive damages against Wilkins for defamation.

### Jury Verdicts for Gena Smith

The jury found that the District would have discharged Smith even if she had received a constitutionally-required hearing and that she would have earned $6,540 in wages and fringe benefits from the date of her discharge through the earliest date that she would have been discharged following a hearing. The jury found for Smith on each of her additional claims: a race discrimination claim for wrongful discharge under Title VII against the District; a breach of contract claim against the District; and a defamation claim against Jackson. The jury awarded Smith $60,000 for lost wages and benefits for wrongful termination and reduced Smith's damages for lost wages and benefits resulting from breach of contract by the amount already awarded. The jury also awarded Smith $20,000 against the District for emotional pain, suffering, and mental anguish suffered as a result of race discrimination and $2,500 in compensatory damages and $5,000 in punitive damages against Jackson for defamation.

## II. Renewed Motions for Judgment as a Matter of Law

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . . " Fed. R. Civ. P. 50(a)(1). A jury's verdict must be affirmed "unless, viewing the evidence in the light most favorable to the prevailing party, [the court finds] that a reasonable jury could not have found for that party." *Cross v. Cleaver*, 142 F.3d 1059, 1066 (8th Cir.1998). "When reasonable persons could differ as to the conclusion to be drawn from the evidence, the motion must be denied." *E.E.O.C. v. Kohler Co.* 335 F.3d 766, 772 (8th Cir. 2003)(citing *Smith v. Riceland Foods, Inc.*, 151 F.3d 813,

818 (8th Cir. 1998); *Ryther v. KARE 11*, 108 F.3d 832, 844 (8th Cir.1997). The Eighth Circuit has cautioned that a court must be extremely guarded in granting judgments as a matter of law after a jury verdict. *See E.E.O.C. v. Kohler Co.,* 335 F.3d at 772(quoting *Haynes v. Bee-Line Trucking Co.*, 80 F.3d 1235, 1238 (8th Cir.1996)).

### **The District's and Jackson's Renewed Motion**

Applying the foregoing standard, the Court finds that the evidence presented at trial is sufficient to support each of the jury's findings and verdicts against the District and Jackson. The District contends that the evidence does not support a *prima facie* case of race discrimination or a finding that the District's stated reasons for terminating Plaintiffs' contracts were pretextual. However, the relevant question at this point "is simply whether the plaintiff's evidence permits a reasonable inference of discrimination . . . ." *E.E.O.C. v. Kohler Co.,* 335 F.3d at 772 (citing *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 717, 103 S.Ct. 1478 (1983); *Cardenas v. AT & T Corp.*, 245 F.3d 994, 998 (8th Cir. 2001)). Here, the Court finds that the jury had a sufficient evidentiary basis to find, by a preponderance of the evidence, that race was a motivating factor for the decisions to terminate Plaintiffs' contracts. The court further finds that the jury had sufficient evidence to find that Defendants' stated reasons for terminating Plaintiffs' contracts were a pretext to hide race discrimination.

Next, the District argues that the jury awarded Nassar an amount that exceeds the wages and benefits he would have received throughout the remainder of his contract and thereby "disregarded the fact that Dr. Nassar only had a three . . . year contract and could have been non-renewed for any reason or no reason at all." Docket entry #132, at 2. However, the evidence presented at trial, particularly the testimony of Dr. Ralph Scott, supports the jury's award for

Nassar's lost wages and benefits.

Finally, the District argues that the jury's finding that Smith would have been discharged even if she had received a hearing is inconsistent with the finding that race motivated the decision to terminate Smith's contract. Such is not the case. The jury's finding, that Smith would have been discharged even if she had been afforded procedural safeguards, is not equivalent to a finding that the District terminated Smith's employment for a legitimate, non-discriminatory reason. Procedural safeguards lessen the risk of error in the truth-finding process, but they do not eliminate the possibility that a decision is motivated by race discrimination.

## **Wilkins's Renewed Motion**

By separate motion, Wilkins renews his motion for judgment as a matter of law on Nassar's defamation claim against him. Although Nassar initially opposed the motion, he has filed a response stating that he concedes that Wilkins's motion should be granted. *See* docket entry #141. Accordingly, the Court will set aside the jury's finding regarding Wilkins's liability for defamation and the related verdicts for compensatory and punitive damages.

## **Plaintiffs' Motion for Attorney's Fees**

Plaintiffs petition the Court for an attorney's fee award "in line with" a 40% contingency fee agreement. A copy of the contingency fee agreement between Nassar and counsel reads in part as follows:

> You agree to pay, and we agree to accept, as payment for our legal services, the following percentages of gross recovery:
>
> (1) One-third (33 1/3%) of any proceeds paid to client;
> (2) If an appeal is taken by either party forty percent (40%).
> Attorney will keep track of time, charging hourly rate. If recovery is made and attorney fees are awarded, client will be credited with fees awarded, against the contingency fee.

Docket entry #110, Ex. A.  A copy of Smith's contingency fee agreement contains similar language.  *See* docket entry #110, Ex. B.

Both plaintiffs prevailed with claims for deprivation of procedural due process, race discrimination, and breach of contract, and there is no question that they qualify as prevailing parties entitled to a fee award under both federal and state statutes.  Title VII authorizes an award of "a reasonable attorney's fee" to the prevailing party.  42 U.S.C. § 2000e-5(k).  Likewise, the prevailing party in a § 1983 action is entitled to "a reasonable attorney's fee" as part of the costs, *see* 42 U.S.C. § 1988(b), and Arkansas Code § 16-22-308 provides that in any civil action for breach of contract, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as cost.  *See* Ark. Code Ann. § 16-22-308.

The question in this case is whether the fees requested are reasonable, and Plaintiffs cite both federal and state law in support of their request for a fee award "in line with" their contingency-fee agreements.  The starting point for determining a reasonable fee under the federal fee-shifting statutes is the "lodestar" amount, which is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933 (1983)).  Although the lodestar amount normally produces a "reasonable" attorney's fee as required under the fee-shifting statutes, "in some cases of exceptional success an enhanced award may be justified."  *Id*.  Enhancement of the lodestar amount based *solely* on the existence of a contingency fee agreement is not permitted, *see City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S. Ct. 2638, 2644 (1992), but the existence of a contingency-fee agreement is one factor that may be considered in determining a reasonable fee.[1]

---

[1]Factors relevant to the Court's inquiry, commonly referred to as the *Johnson* factors, include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the

7

*See Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

Arkansas courts apply a similar standard to applications for fee awards pursuant to § 16-22-308. "Certainly, the fact that the agreed upon fee was a contingency fee does not automatically entitled the attorney to that amount under § 16-22-308." *All-Ways Logistics, Inc. v. USA Truck, Inc.*, No. 3:06CV00087 SWW, 2007 W.L. 4285410, *12 (E.D. Ark. Dec. 4, 2007)(citation omitted). However, a court may consider the existence of a contingency-fee agreement as one of the multiple factors relevant to determining a reasonable fee award.[2] *See All-Ways Logistics, Inc. v. U.S.A. Truck, Inc.*, 583 F.3d 511, 521 (2009).

Because the Court perceives no conflict between the standards governing the applicable federal and state fee-shifting statutes, the Court will follow the procedure set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933 (1983), and begin by determining the lodestar amount.

---

skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 430, 103 S.Ct. 1933, 1938 (1983)(citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)). Normally, many of the *Johnson* factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9, 103 S.Ct. 1933.

[2]The following factors, commonly referred to as the *Chrisco* factors, are relevant in determining a reasonable attorney's fee award under § 16-22-308: (i) the experience and ability of the attorney; (ii) the time and labor required to perform the service properly; (iii) the amount in controversy and the result obtained in the case; (iv) the novelty and difficulty of the issues involved; (v) the fee customarily charged for similar services in the local area; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed upon the client in the circumstances; and (viii) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney. *See Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 229, 800 S.W.2d 717, 718-19 (1990).

**Reasonable Hourly Rate**

The amount of the fee must be determined on the facts of each case, and "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates and documenting the appropriate hours expended and hourly rates.'" *Fish v. St. Cloud State University,* 295 F.3d 849, 851 (8th Cir. 2002)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933 (1983)). Plaintiffs submit counsel's invoices, which document a total $101,475 in attorney's fees--based on 368.8 hours expended by attorney B. Michael Easley, at the hourly rate of $250; 47.75 hours expended by attorney Austin H. Easley, at the hourly rate of $175; and 10.5 travel hours expended by Austin H. Easley at the hourly rate of $87.5.

Plaintiffs seek a fee award that is "in line with" their contingency fee agreements and which exceeds what counsel would normally charge. Taking into account the Court's decision to set aside the jury's verdict against Wilkins, the combined damage award in this case totals $466,540. Accordingly, a 40% contingent fee would total $186,616, and would approximate an hourly rate of $440.

Plaintiffs note that this case involved discovery disputes, and Plaintiffs filed a motion to compel, which the Court granted. Plaintiffs also note that they pursued multiple claims, "with a myriad of issues to prosecute against the several Defendants." Docket entry #110, at 3. The Court agrees that Plaintiffs' multiple claims against multiple defendants required the expenditure of considerable time and effort. However, the issues presented could not be described as irregular or novel, and the complexity of the case is "presumably fully reflected in the number of billable hours recorded by counsel." *See Blum v. Stenson,* 465 U.S. 886, 898, 104 S.Ct. 1541,

9

1549 (1984).

Regarding the experience and ability of counsel, the Court finds that Plaintiffs' lead counsel, B. Michael Easley, is an experienced attorney, who demonstrated superior legal and advocacy skills in this case.[3] Austin H. Easley, who served as co-counsel at trial, also demonstrated superior legal skills and zealous representation. Austin Easley has practiced law for two and one-half years, and his hourly rate is $175. Although Plaintiffs' counsel provided excellent representation in this case, the Court finds that an hourly rate of $440 is outside the bounds of reasonable rate for this local market and that a local attorney possessing similar experience and skill would command an hourly rate of $375.[4] Accordingly, the Court finds that the following hourly rates are reasonable in this case:

       B. Michael Easley    $375
       Austin H. Easley     $175

**Hours Reasonably Expended**

---

[3] Attorney Easley testifies by affidavit that he has practiced law since 1974, he is a member of the American College of Trial Lawyers and has been named as ALTA's Trial Lawyer of the Year. *See* docket entry #110, Ex. B.

[4] A reasonable hourly rate general means the ordinary fee for similar work in the local community. The Court is unaware of an employment discrimination case in this local community in which plaintiff's counsel charged hourly rates in excess of $375. *See Fuller v. Fiber Glass Systems, LP,* 618 F.3d 858, 868 (8th Cir. 2010)(finding no abuse of discretion where trial court *sua sponte* reduced hourly rate from $250 to $225 in employment discrimination case); *Jackson v. Bauxite School Dist.*, No. 4:08CV03610 WRW, 2010 WL 3522391, at *1 (E.D. Ark. Sept. 2, 2010)(approving hourly rates in Title VII case of $150, $175, and $250); *Dominic v. DeVilbiss Air Power Co.,* No. 05-5016, 2006 WL 516847, at *4 (W.D. Ark. March 2, 2006)(approving hourly rates in Title VII case of $160 and $200); *Ware v. Little Rock School Dist.*, No. 4:04CV01014 JMM, 2007 WL 2258691, at *4 (E.D. Ark. Aug. 3, 2007)(approving hourly rate in Title VII case of $185); *Brooks v. Little Rock School Dist.*, No. 4:07CV00453 GTE, docket entry #38 (motion for attorney fees in employment case by attorneys of leading Little Rock law firm, charging hourly rates of $350, $275, and $260, respectively, while paralegals charged $90).

Defendants acknowledge that Plaintiffs are prevailing parties in this case, but they assert that Plaintiffs received "nominal, $1.00, judgments in the area of civil rights" and that the fee award should reflect "that the judgment was in fact nominal in the area where civil rights attorney's fees would be awarded." Docket entry #127, at 1. The Court disagrees. With the exception of the Court's decision to set aside the jury's verdict against Wilkins, Plaintiffs have prevailed on each claim they pursued. Furthermore, Defendants' claim that Plaintiffs received only nominal damages for civil rights violations has no basis in fact. Plaintiffs' breach of contract claims and civil rights claims arose from the same facts and involved similar damages, and the Court specifically instructed the jury that it could not award Plaintiffs damages for lost wages and benefits more than once.

Given the interrelatedness of Plaintiffs' civil rights and contract claims, and the fact that Arkansas law permits an award of attorney's fees to the prevailing party in any civil action for breach of contract, the Court finds it unnecessary to eliminate hours devoted to Plaintiffs' breach of contract claims. However, Plaintiffs are not entitled to recover fees for time expended in pursuit of defamation claims, which are distinct from Plaintiffs' civil rights and contract claims. The Court will not attempt the impossible task of identifying specific hours devoted to Plaintiffs' defamation claims. Instead, the Court will reduce the hours worked by 5% to account for time related to Plaintiffs' defamation claims. *See Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success.").

Defendants object to several time entries listed on opposing counsel's invoices. The Court has reviewed the billing entries in question and has carefully considered Defendants'

objections.  With the exception 2.6 travel hours reported for July 11, 2012, the Court finds that Defendants' objections are without merit and that the time reported was reasonably expended. Accordingly, after reducing reported hours worked by 5% to account for time expended on Plaintiffs' defamation claims and deducting 2.6 travel hours, the Court will award attorney's fees as follows:

|                    | Hourly Rate | Hours  | Total Fees   |
|--------------------|-------------|--------|--------------|
| B. Michael Easley  | $375        | 347.89 | $130,458.75  |
| Austin H. Easley   | $175        | 55.34  | $   9,684.50 |
|                    |             | Total Award | $140,143.25 |

In support of their contention that the fee award should be enhanced, Plaintiffs report that they were unemployed for a period of time after they filed this action, and they lacked to financial means to pay an hourly fee.  Plaintiffs assert that by accepting representation under a contingency-fee agreement, attorney Easley accepted financial risk and the chance that he would suffer the loss of goodwill from the local community.  Plaintiffs also report that this case prevented Easley from accepting calls from potential clients and working on other cases.

Enhancement of the lodestar amount is justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549 (1984)(citing *Hensley*, 461 U.S., at 434, 103 S.Ct., at 1940.  Plaintiffs offer no such evidence in this case.  The Court finds that an hourly fee of $375, which exceeds counsel's normal hourly rate of $250, is sufficient to address counsel's investment of time and money in this case and substantial enough

to encourage attorneys to accept representation in similar cases. Accordingly, the Court finds that the lodestar amount represents a reasonable attorney's fee in this case.

### Allocation of Liability for Attorney's Fee Award

Defendant Wilkins, responding separately in opposition to Plaintiffs' fee petition, objects that he should not shoulder the cost of Plaintiffs' fee award. Nassar's concession that the jury's verdict against Wilkins should be set aside renders this issue moot. Wilkins bears no liability for damages or attorney fees, and the District is jointly and severally liable with Jackson for the fee award in this case. *See Carhart v. Stenberg*, 192 F.3d 1142, 1151-52 (8th Cir. 1009).

### Plaintiffs' Costs

Documentation submitted in support of Plaintiffs' motion for attorney's fees includes a list of "case expenses" totaling $7,949.15. Plaintiffs' list of expenses lacks detail and contains several entries that state the names of various people beside a dollar amount (*e.g.*, Michael Manning $30.00). To the extent that Plaintiffs seek to recover costs, the motion is denied without prejudice. The Court is unable to determine from the information provided whether the items listed are recoverable costs.[5]

---

[5] Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that a prevailing party shall be allowed costs, other than attorney's fees, unless otherwise directed by the court or unless a federal statute or other rules provide for costs. Rule 54(d) "codifies the presumption that ... costs will be awarded to prevailing parties." *Police Retirement Sys. v. Midwest Inv. Advisory Serv.*, 940 F.2d 351, 358-59 (8th Cir. 1991). Title 28 U.S.C. § 1920 defines the expenses that may be taxed as costs under Rule 54(d)(1). These include (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under [28 U.S.C. § 1923]; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

IT IS THEREFORE ORDERED that:

(1) Separate Defendants Hughes School District and Earnestine Jackson's renewed motion for judgment as a matter of law (docket entry #132) is DENIED.

(2) Separate Defendant Jimmy Wilkins's renewed motion for judgment as a matter of law (docket entry #129) is GRANTED, and an amended judgment will be entered accordingly.

(3) Plaintiffs' motion for attorney's fees (docket entry #110) is GRANTED IN PART AND DENIED IN PART. Plaintiffs are awarded 140,143.25 in attorney's fees.

(4) Defendant Jimmy Wilkins's motion to stay enforcement of the judgment against him (docket entry #117) is DENIED AS MOOT.

IT IS SO ORDERED THIS 28TH DAY OF MARCH, 2013.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE